## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-20122-JEM/Becerra

ALEXANDER MOSKOVITS,

      Plaintiff,

v.

MERCEDES-BENZ USA, LLC, AUTONATION,
INC., L.P. EVANS MOTORS WPB, INC. d/b/a MERCEDES-
BENZ OF MIAMI, MAVEL RUIZ, RICHARD IVERS, REX
RUSSO, NANCY GREGOIRE, UNITED STATES
DEPARTMENT OF STATE, UNKNOWN AGENTS,

      Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION[1] ON MOTIONS TO DISMISS

     **THIS CAUSE** came before the Court upon various motions to dismiss.  First, Judge Mavel

Ruiz ("Judge Ruiz") filed a Motion to Dismiss with Prejudice.  ECF No. [11].  Second, Defendant

Nancy Gregoire ("Gregorie") filed a Motion to Dismiss with Prejudice.  ECF No. [25].  Third,

Defendants L.P. Evans Motors WPB, Inc. d/b/a Mercedes-Benz of Miami ("L.P. Evans"),

Autonation, Inc. ("Autonation"), Mercedes-Benz USA, LLC ("Mercedes Benz"), and Richard

Ivers ("Ivers") filed a Motion to Dismiss.  ECF No. [26].  Finally, Defendant Rex Russo ("Russo")

filed a Motion to Dismiss. ECF No. [27].  Plaintiff subsequently filed an Omnibus Response to

Motions to Dismiss With Cross-Motion to Disqualify Under Advocate-Witness Rule.  ECF No.

[31].  Thereafter, Judge Ruiz filed a Reply, ECF No. [33], as did Defendant Russo, ECF No. [34],

Defendant Gregoire, ECF No. [40], and Defendants L.P. Evans, Autonation, Mercedes Benz, and

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States
District Judge.  ECF No. [7].

Ivers, ECF No. [41].  In addition, the United States Department of State (the "Department of State") filed a Motion to Dismiss.  ECF No. [39].  Plaintiff filed a Response, ECF No. [42], and the Department of State filed a Reply, ECF No. [44].

Upon due consideration of the motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Amended Complaint, ECF No. [5], be **DISMISSED WITH PREJUDICE** and that Plaintiff's Motion to Disqualify Under Advocate-Witness Rule, *id.*, be **DENIED**.  In addition, Defendants Ivers and Gregoire's request for attorneys' fees and costs should be **DENIED**.  *See* ECF Nos. [26], [40].

## I.    BACKGROUND

This case stems from Plaintiff's purchase of a Mercedes Benz vehicle from Defendant L.P. Evans in January 2017.  ECF No. [5-1] at 4.  Plaintiff states that shortly thereafter, he realized that the vehicle identification number (the "VIN number") stated in the purchase contract and vehicle registration did not match the VIN number of the vehicle he was given.  *Id.* at 5.  Plaintiff states that he reported the error via an e-mail to the car salesman, an agent with the Internal Revenue Service (the "IRS"), and the Federal Bureau of Investigations (the "FBI").  *Id.*; *see* ECF No. [5-1] at 25 ("This is to formally advise you . . . that today in the afternoon I acquired a Mercedes Benz CLA 250 with all paperwork showing that I bought and insured VIN WDDSJ4EB1/HN460621 and you delivered HN436956 . . . same color, same make, and model exposing me to a potential auto theft charge.") (emphasis omitted).  Plaintiff states that the correct vehicle was subsequently delivered to him, but that ten Unknown Agents (the "Agent Defendants"), in cooperation with Defendants L.P. Evans, Autonation, and Mercedes Benz (the "Dealership Defendants"), installed a GPS tracker in the second vehicle without a warrant and without his consent.  ECF No. [5] at 4.

Plaintiff alleges that the GPS tracker allowed the Agent Defendants to track him on his trip from South Florida to Texas, and to use an x-ray van to screen his vehicle in Texas. *Id.* at 8. Plaintiff states that he then drove his vehicle from Texas to Mexico, where he was intercepted by a gang. *Id.* at 3; ECF No. [5-1] at 6; ECF No. [27] at 2. Plaintiff contends that in an effort to avoid the gang, he drove his vehicle into a traffic barrier, which resulted in significant damages to the vehicle. ECF No. [5] at 3; ECF No. [27] at 2. As a result, Plaintiff states that he took his vehicle to an authorized Mercedes Benz body shop. ECF No. [5] at 3; ECF No. [5-1] at 6; ECF No. [27] at 2. Plaintiff alleges that he then went to the United States Embassy in Guatemala City to report "all of the distressing events of the preceding ten (10) days." ECF No. [5] at 3. Plaintiff states that staff members of the Department of State involuntarily committed him to a hospital where he was assaulted. *Id.* When Plaintiff returned to the body shop where he had left his vehicle, he discovered that it had been stripped of its interior. *Id.* at 7. Plaintiff attributes the state of the vehicle to a full cavity search that was conducted without his knowledge and consent. *Id.*

### A.  The State Court Litigation

Based upon these facts, on May 10, 2018, Plaintiff filed suit against the Dealership Defendants and the Agent Defendants in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. ECF No. [5-1] at 1–16. In that case, Plaintiff asserted claims for fraud, invasion of privacy, intentional infliction of emotional distress, and conspiracy to commit an unlawful act. *See id.* Defendant Russo is an attorney who represented Plaintiff in the state action, and Defendants Ivers and Gregoire represented the Dealership Defendants. ECF No. [5] ¶ 35; ECF No. [5-1] at 56. Judge Ruiz was the presiding judge in the state action. *See* ECF No. [5-1]. Plaintiff filed a Motion to Disqualify Judge Ruiz as the presiding judge. ECF No. [5-1] at 76. Plaintiff argued that the "new case clerk corruptly circumvented random selection" and

improperly assigned Judge Ruiz to the case. *Id.* (quotation omitted). The motion to disqualify was denied, and Judge Ruiz remained as the presiding judge. *See* ECF No. [5-1] at 71–73.

On May 29, 2018, the defendants in the state action filed a Motion to Stay Litigation Pending Arbitration, arguing that Plaintiff's claims were subject to an arbitration agreement. ECF No. [5-1] at 29. On February 3, 2020, Judge Ruiz held a hearing on the motion to compel arbitration. *Id.* at 38–53. At the hearing, Defendant Russo explained that when Plaintiff was shopping for a vehicle, he informed the Mercedes Benz salesman of his intent to drive the car into Mexico and that the salesman "let him leave the showroom with a car that had the wrong VIN number" and "steered him into an insurance policy that didn't cover him." *Id.* at 42:6–14. Moreover, Defendant Russo explained that the finance agreement did not permit Plaintiff to drive the car into a different country. *Id.* at 45:13–17. Defendant Russo argued that the arbitration agreement attached to the vehicle purchase contract did not apply because the conduct alleged in the complaint, namely the car switch and installation of a GPS tracking device, was independent from the purchase of the vehicle. *Id.* at 48–49. Judge Ruiz concluded that Plaintiff's claims were subject to arbitration because the arbitration agreement encompassed all claims. *Id.* at 50:1–3. Plaintiff appealed the order denying Judge Ruiz's disqualification and the order comempelling arbitration, but the Third District Court of Appeal *per curiam* affirmed. *See Moskovits v. L. P. Evans Motors WPB, Inc.*, 303 So. 3d 543 (Fla. 3d DCA 2020).

**B. The Instant Case**

Plaintiff now files this Amended Complaint asserting: (1) legal malpractice against Defendant Russo (Count I); (2) a violation of 42 U.S.C. § 1983 against all Defendants (Count II); (3) a conspiracy to interfere with his civil rights under 42 U.S.C. § 1985 against all Defendants (Count III); (4) a *Bivens* Action against the Department of State and the Agent Defendants (Count

IV); (5) an Alien's Action for Tort against all Defendants (Count V); and (6) fraud on the court against Judge Ruiz and Defendants Russo, Ivers, Gregoire, and the Dealership Defendants (Count VI).  ECF No. [5].  As to each count, Plaintiff requests $100,000 in damages, plus costs.  *Id.* at 28–30.  As to Count VI, Plaintiff also requests "a judgment to vacate and set aside the motion to compel arbitration . . . and re-open the case for a new and fair hearing in federal courts."  *Id.* at 30.

The crux of the Amended Complaint is that Defendants conspired to interfere with Plaintiff's Constitutional rights.  *Id.* at 1–2.  Plaintiff first argues that his Constitutional rights were violated at the state court hearing on the Dealership Defendants' motion to compel arbitration.  *Id.*  Plaintiff states that Judge Ruiz and Defendants Russo, Gregoire, and the Dealership Defendants: (1) disregarded the invasion of Plaintiff's privacy rights given the installation of a GPS tracking device in his vehicle, (2) aided and abetted in a conspiracy to deprive Plaintiff of his Constitutional rights, (3) discriminated against Plaintiff based on his status as a felon, (4) denied Plaintiff the right to a jury trial, and (5) committed fraud on the court.  *Id.* at 2–3.  As to the Department of State, Plaintiff alleges that it unlawfully committed him to the world's most dangerous hospital in Guatemala. *Id.* at 3.  As to the Agent Defendants, Plaintiff alleges that they "conducted an identical car switch and unwarranted GPS tracker installation" in cooperation with the Dealership Defendants, which deprived him of his federal rights.  *Id.* at 4.

Specifically, Plaintiff states that he is a fifty-seven-year-old man who was born in Rio de Janeiro, Brazil.  ECF No. [38] at 1.  He states that he "originally became involved with drugs at age 18 during a visit to the New York City discotheque known as 'Studio 54' attended by American cultural icons, including a White House Chief of Staff."  *Id.* at 2.  Plaintiff notes that his visit to Studio 54 gave him "a government seal of approval as to the recreational use of cocaine that was the main feature of the venue."  *Id.*  He states that in the summer of 1983, "after earning a place

on the Wharton School Dean's List for academic excellence," he was arrested in Mexico because
he was in possession of cocaine.  *Id.*  Plaintiff states that while he was arrested in Mexico, United
States Congressman Tom Lantos helped him become "certified as a U.S. citizen at birth," which
enabled his transfer to a correctional facility in San Diego, California.  *Id.* at 2–3.  Plaintiff states
that subsequently, at the age of twenty-four, he was convicted of a drug offense and served
"approximately a decade of his youth in prison."  *Id.* at 3.  Once he was released, he was able to
re-integrate into society by working in various law firms.  *Id.*

Plaintiff states that on December 25, 2016, he e-mailed "a then sitting circuit court judge
in Miami-Dade County," who was a former federal prosecutor in the National Security Section.
ECF No. [42] at 9.  Plaintiff also copied the FBI and the IRS on the e-mail.  *Id.*  In that e-mail
Plaintiff questioned the judge's dismissal of a lawsuit Plaintiff had pending against a different
judge for fraud on the court.  *Id.*  Plaintiff notes, however, that the dismissal of his state case was
affirmed by the Third District Court of Appeal.  *Id.*  Plaintiff states that in the e-mail, he questioned
the circuit court judge's ties to a Hialeah health care company, which in turn had "long-term ties
to the then Clerk of the Third-District Court."  *Id.* at 9–10.  Plaintiff states that "within less than
[twenty] days, on January 13, 2017," the Agent Defendants and the Dealership Defendants aided
and abetted "in a foiled attempt to cause [Plaintiff]'s false imprisonment for auto theft" when they
conducted an identical car switch of his Mercedes Benz vehicle.  *Id.* at 10 (quotations omitted).

Plaintiff states that on January 20, 2017, he was the victim of an "attempted roadblock
carjacking" in Mexico.  *Id.* at 11.  He states that, as a result, he sought the assistance of the United
States Embassy in Guatemala.  *Id.*  Plaintiff asserts that when he arrived at the Embassy, he
recounted the attempted carjacking to a United States Marine and an FBI agent.  *Id.* at 12.  Plaintiff
states that he returned to the Embassy on January 23, 2017, and at that time, he was involuntarily

committed to a hospital, "where [he] was almost immediately attacked at admission by a group of bedlamites led by a male nurse in the presence of [the] Embassy Officer." *Id.* at 13 ("The gang tackled and piled on top of the [Plaintiff] trying to asphyxiate him. [Plaintiff] simulated unconsciousness once he was running out of air under the weight of the pile. The melee resulted in a circular arm burn and broken rib. After the many assailants got off the pile over [Plaintiff], the [Plaintiff] revived.") (quotation omitted). Plaintiff states that he was released from the hospital within twenty-four hours and that he then took a flight to Brazil using his Brazilian passport because an Embassy official had confiscated his United States passport. *Id.* at 14. Plaintiff states that he returned to Guatemala on July 1, 2017 and discovered that the interior of his car had been gutted. *Id.* He states that he has incurred many expenses in attempt to fix and retrieve his vehicle. *Id.* at 14–17.

## II.     THE MOTIONS TO DISMISS

Five motions to dismiss were filed. All Defendants request that the Amended Complaint be dismissed with prejudice.

### A.  Judge Ruiz's Motion To Dismiss

Judge Ruiz filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. [11]. Judge Ruiz argues that the Eleventh Amendment bars this action because she is a public officer who acted in her official capacity as judge when she ruled on motions in Plaintiff's state case. *Id.* at 2–3. Judge Ruiz states that there is no allegation that she acted in her individual capacity, rather Plaintiff's suit is premised on a dissatisfaction with her rulings. *Id.* at 3. In addition, Judge Ruiz argues that this action is barred by the doctrine of judicial immunity, which affords judges absolute immunity where the alleged conduct was performed in their judicial capacity. *Id.* at 3. Thus, Judge Ruiz argues that she is entitled to dismissal of the claims against her because they stem

entirely from her actions as a judge. *Id.* at 4. Moreover, Judge Ruiz argues that, to the extent Plaintiff purports to sue her in her individual capacity, she is entitled to qualified immunity, which shields government officials engaging in discretionary acts that do not violate the Constitution. *Id.* at 4. Furthermore, Judge Ruiz argues that the *Rooker-Feldman* doctrine bars this action because Plaintiff is improperly attempting to have this Court overturn her orders in the state case. *Id.* at 5. Finally, Judge Ruiz argues that Plaintiff has failed to state a claim because he has not alleged any factual basis and any claims regarding his dissatisfaction with her rulings are frivolous. *Id.* at 9.

**B. Defendant Gregoire's Motion To Dismiss**

Defendant Gregoire, the Dealership Defendants' appellate counsel in the state proceeding, filed a Motion to Dismiss with Prejudice. ECF No. [25]. Defendant Gregoire first argues that Plaintiff's Amended Complaint should be dismissed with prejudice because it is replete with speculation and conclusory allegations that fall short of establishing any wrongdoing. *Id.* at 4. Defendant Gregoire submits that the Amended Complaint is premised solely on a dissatisfaction with the rulings in the state case, thereby rendering this action frivolous. *Id.* Next, Defendant Gregoire argues that because the facts alleged occurred within the context of the state proceeding, she is shielded from liability by the litigation privilege. *Id.* at 5–7.

In addition, Defendant Gregoire argues that Plaintiff failed to state a claim in Counts II, IIII, V, and VI. *Id.* at 7. As to Count II for deprivation of rights under § 1983, Defendant Gregoire argues that Plaintiff has failed to state a claim because he has not alleged that she had actual knowledge of a fraudulent scheme to deprive Plaintiff of his Constitutional rights. *Id.* at 7–8. As to Count III for conspiracy to interfere with Plaintiff's civil rights under § 1985, Defendant Gregoire argues that that Plaintiff has failed to state a claim because he has not alleged: (1) that she knowingly agreed with any other Defendants to deprive him of his constitutional rights, (2)

when the alleged conspiracy occurred, (3) where the alleged conspiracy occurred, (4) who was present when the alleged conspiracy occurred, (5) whether there was one agreement among the alleged co-conspirators or multiple agreements, (6) whether there was one agreement or a series of agreements, (7) how Defendant Gregoire's alleged acts in furtherance of the conspiracy were distinct from her activities as a lawyer, and (8) how any of the alleged activities were unlawful or fraudulent. *Id.* at 9–10. As to Count V, the Alien's Action for Tort, Defendant Gregoire argues that Plaintiff has failed to state a claim because he has not alleged any supporting facts. *Id.* at 10– 12. As to Count VI for fraud on the court, Defendant Gregoire argues that Plaintiff has failed to state a claim because the alleged fraud does not support an independent action to set aside a judgment. *Id.* at 12. Moreover, Defendant Gregoire argues that there are no allegations that she made any material misrepresentations or fabricated any evidence to improperly influence the state court. *Id.* at 13. Defendant Gregoire states that even if Plaintiff's allegations were true, this is not the proper forum to address the alleged wrongdoings because they should have been raised at the state level instead. *Id.* at 13–14.

**C.  The Dealership Defendants And Defendant Ivers' Motion To Dismiss**

The Dealership Defendants and their trial counsel in the state proceeding, Defendant Ivers, jointly filed a Motion to Dismiss. ECF. No. [26]. The Dealership Defendants and Defendant Ivers first argue that this action is barred by the *Rooker-Feldman* doctrine because it is merely an attempt to circumvent the state trial and appellate process. *Id.* at 4–5. Next, the Dealership Defendants and Defendant Ivers contend that the Amended Complaint should be dismissed as a shotgun pleading because it is not possible to decipher which claims correspond to each defendant. *Id.* at 6–7. The Dealership Defendants and Defendant Ivers further argue that Count II for deprivation of rights under § 1983 fails because they were not state actors acting under the color of state law

for the purposes of § 1983 throughout the course of the state litigation. *Id.* at 7–8.  In addition, the Dealership Defendants and Defendant Ivers argue that Plaintiff's § 1985 claim fails because Plaintiff is not a member of a protected class by virtue of his status as an ex-felon.  *Id.* at 8 n.1. Moreover, the Dealership Defendants and Defendant Ivers argue that this action must be dismissed because Plaintiff's claims are subject to arbitration as determined by the state trial court and affirmed by the state appellate court.  *Id.* at 9–10.   Finally, the Dealership Defendants and Defendant Ivers argue that Plaintiff's claims are barred by the litigation privilege because they are premised on the actions of the Dealership Defendants and their counsel during the state litigation. *Id.* at 11–12.  The Dealership Defendants and Defendant Ivers seek attorneys' fees and costs for "Plaintiff's vexatious and meritless litigation" under 42 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority.  *Id.* at 13.

### D.  Defendant Russo's Motion To Dismiss

Defendant Russo, Plaintiff's counsel in the state proceeding, filed a Motion to Dismiss based on Plaintiff's failure to state a claim.  ECF No. [27].   As to Count I for malpractice, Defendant Russo argues the Amended Complaint is based on speculation and is devoid of any factual basis.  *Id.* at 4.  Specifically, Defendant Russo argues that Plaintiff failed to allege any facts in support of the allegation that he would have prevailed at the state level had Defendant Russo not acted negligently in failing to cite binding case law.  *Id.* at 4.  Defendant Russo notes that it is unclear how citing dicta could have changed the outcome of the state proceedings.  *Id.* at 7. Defendant Russo further argues that Plaintiff failed to allege any loss as a result of the order compelling arbitration or that Defendant Russo's actions were the proximate cause of the loss.  *Id.* at 5.  In addition, Defendant Russo argues that his failure to object to the state judge's question regarding Plaintiff's criminal past was not improper because it was simply a non-discriminatory

inquiry.  *Id.* at 8.  As to Counts II, III, V, and VI, Defendant Russo "adopts and incorporates the arguments of the other Defendants."  *Id.*

### E.  The Department of State's Motion To Dismiss

Defendant Department of State filed a Motion to Dismiss.  ECF No. [39].  First, the Department of State argues that Plaintiff's *Bivens* claim is barred by the doctrine of sovereign immunity because such claim cannot be brought against a federal agency.  *Id.* at 2.  In addition, Plaintiff's §§ 1983 and 1985 claims and Alien's Tort Act claim are also barred by sovereign immunity, as established by federal law.  *Id.* at 2–3.  The Department of State also argues that the claims against Unknown Agents one through ten should be dismissed because an action against a fictitious party is not permitted under federal law and because Plaintiff has failed to include any specific facts as to the identity of the agents.  *Id.* at 3–4.

### F.  Plaintiff's Response To The Motions To Dismiss

Plaintiff filed an Omnibus Response in Opposition to the Motions to Dismiss filed by Judge Ruiz, Defendant Gregoire, the Dealership Defendants and Defendant Ivers, and Defendant Russo. ECF No. [31].  Plaintiff first argues that the *Rooker-Feldman* doctrine does not apply because Plaintiff did not raise federal claims in the state proceedings, and as such, the claims asserted in this suit were never addressed by the state trial and appellate courts.  *Id.* at 4–5.  In addition, Plaintiff states that he has named new defendants in this suit who were not parties to the state proceedings.  *Id.* at 4.  Thus, because he does not seek to have this Court review a conclusion reached by the state courts, Plaintiff submits that this federal suit is independent from the state action.  *Id.* at 5.  Moreover, Plaintiff argues that the litigation privilege cannot bar his § 1983, § 1985, or Alien's Action for Tort claims because if it did, it would eviscerate the causes of action such that a claim could never be sustained.  *Id.* at 7.

As to immunity, Plaintiff first argues that Judge Ruiz is not immune from suit because she usurped her authority when she denied the motion for disqualification and when she discriminated against Plaintiff based on his status as an ex-felon in subsequent rulings. *Id.* at 29–31. Plaintiff further argues that Eleventh Amendment immunity does not apply because he has asserted claims against Judge Ruiz in her individual capacity based on her violation of Plaintiff's rights under the color of state law. *Id.* at 32–33. Moreover, Plaintiff argues that qualified immunity does not apply because he has alleged sufficient facts to show that Defendant "Ruiz and the defendant lawyers knowingly violated clearly established federal rights through an extrinsic fraud animated by class-based discrimination." *Id.* at 33–34.

Next, Plaintiff argues that he has sufficiently pled all claims. *Id.* at 8. As to Count I for malpractice, Plaintiff argues that Defendant Russo has "expose[d] his malpractice" because he admits that he failed to cite binding case law when he represented Plaintiff in the state court. *Id.* at 28. Plaintiff submits that the failure to cite applicable case law deprived him of his constitutional right to a jury trial. *Id.* In addition, Plaintiff states that Defendant Russo failed to object to the state court's insinuation that Plaintiff's trip to Mexico constituted a grand theft auto. *Id.* at 29.

As to Count II for deprivation of rights under § 1983, Plaintiff argues that he has alleged sufficient facts to demonstrate that Defendant Gregoire had knowledge and committed acts in furtherance of a conspiracy to commit fraud on the court in order to deprive Plaintiff of his constitutional rights based on a "class-based discriminatory animus against an ex-felon." *Id.* at 17. In addition, Plaintiff states that the Dealership Defendants and Defendant Ivers can be treated as state actors for the purposes of § 1983 because they acted in conjunction with the state court to deprive Plaintiff of his federal civil rights. *Id.* at 17–19.

As to Count III for conspiracy to interfere with civil rights under § 1985, Plaintiff argues that, as an ex-felon, he is a member of a protected class as has been decided within the context of employment cases.  *Id.* at 8–9.  Plaintiff further argues that he has stated a claim under § 1985 because the alleged acts of extrinsic fraud to obstruct justice are sufficient.  *Id.* at 10.  Moreover, Plaintiff states that he has alleged sufficient facts to demonstrate a "class-based discriminatory animus driving" the conspiracy to deprive him of his constitutional rights.  *Id.* at 11.  In addition, Plaintiff argues that he has sufficiently stated a § 1985 claims against Defendant Gregoire because a reasonable inference can be drawn that she, along with her co-Defendants in this case, participated in a conspiracy to violate Plaintiff's constitutional rights through the state proceeding.  *Id.* at 13.

As to Count V, the Alien's Action for Tort, Plaintiff argues that "the class-based discriminatory animus against [him] due to his status as an ex-felon violates Article 7 of the [United Nations Universal Declaration of Human Rights]."  *Id.* at 24–25.  Plaintiff states that he has sufficiently alleged that Defendants committed fraud on the state court in violation of international law.  *Id.* at 25.

As to Count VI for fraud on the court, Plaintiff argues that he has sufficiently alleged that Defendants Ivers and Russo conspired in an extrajudicial agreement "to sell out Plaintiff to Ivers' clients."  *Id.* at 26.  Plaintiff submits that he has alleged fraud with heightened particularity because he has set out all the overt acts that formed the conspiracy to commit fraud.  *Id.* at 27.

Plaintiff submitted an affidavit in support of the Omnibus Response.  ECF No. [38].  Therein, he explains that in the late 1980s he was convicted of a federal drug offense for which he served "approximately a decade."  *Id.* at 3.  Plaintiff states that in January 2017, he was the victim of a "car switch," which was a foiled attempt to have him imprisoned for automobile theft.  *Id.* at

6.  Plaintiff contends that a GPS tracker was installed in his vehicle without his consent and that his vehicle was subsequently "gutted." *Id.* He further states that he was the victim of an attempted carjacking in Mexico, which he reported to the United States Embassy in Guatemala. *Id.* at 7. However, Plaintiff states that upon reporting the incident to Embassy officials, he was involuntarily committed to the world's most dangerous hospital, where he was almost killed. *Id.* at 7–8. Plaintiff states that he hired Defendant Russo to represent him in a state proceeding, but that his Constitutional rights were violated in that proceeding. *Id.* at 9–10.

In addition, Plaintiff filed a separate Response to the Department of State's Motion to Dismiss. ECF No. [42]. First, "Plaintiff concedes that the injurious conduct is not the conduct of the sovereign, but the action of officers of the sovereign." *Id.* at 1. Plaintiff states that his Constitutional rights were violated at the United States Embassy in Guatemala City when he was involuntarily committed to "the world's most dangerous hospital" and, while committed, the interior of his vehicle was gutted. *Id.* at 2. Plaintiff states that the occurrences in Guatemala were coordinated with agents in Miami, but that he was forced to file suit against the Department of State because the identity of the officers is unknown to him. *Id.* at 3–4. Thus, Plaintiff submits that, if the Department of State is unwilling to disclose the identity of the officers, it must stand in their shoes in this suit. *Id.* at 4. Plaintiff further states that he has sufficiently stated a claim against the Unknown Agents because more information as to their identify cannot be pled until the Government provides full discovery. *Id.* at 5–6. As such, Plaintiff requests that the Motion to Dismiss be denied as to the Unknown Agents and "conditionally granted" as to the Department of State "but only after it provides full disclosure of all the individuals involved." *Id.* at 7.

Plaintiff also filed an affidavit in support of the Response to the Department of State's Motion to Dismiss. *Id.* at 9. Therein, Plaintiff re-iterates the facts that led him to the United States

Embassy in Guatemala. *Id.* at 9–12. Plaintiff explains that when he arrived at the embassy, he first spoke to a United States Marine and then to an FBI agent who introduced him to David Cortez, an individual tasked with assisting Guatemalan tourists. *Id.* at 12–13. Mr. Cortez allegedly drove Plaintiff to the body shop where his vehicle was located. *Id.* at 13. Plaintiff states that he subsequently returned to the Embassy but that he was involuntarily committed to a hospital. *Id.* Plaintiff attests that after his release, he returned to the body shop where he discovered that his car had been gutted. *Id.* at 14. Along with the affidavit, Plaintiff attached various subpoenas directed to the Department of State, the FBI, and the IRS, requesting documents regarding his commitment to the hospital in Guatemala. ECF No. [42] at 20–34.

### G. The Replies

All Defendants filed replies. Judge Ruiz filed her Reply re-iterating that the claims against her should be dismissed because, as a judge acting in her official capacity, she is afforded immunity from this suit. ECF No. [33]. Moreover, Judge Ruiz argues that the Amended Complaint is barred by the *Rooker-Feldman* doctrine because it is essentially an attempt to have this Court reverse the state court ruling. *Id.* at 2. Judge Ruiz further argues that this action is frivolous for which amendment would be futile. *Id.* at 3.

Defendant Russo filed his Reply arguing that the allegations have no basis because Plaintiff's state claim was merely ordered to proceed before an arbitrator, and the results of arbitration are still unknown. ECF No. [34].

Defendant Gregoire filed his Reply asserting that the *Rooker-Feldman* doctrine bars Plaintiff's claims because his alleged injuries stem directly from the state judgment notwithstanding the fact that additional parties and claims are added here. ECF No. [40] at 3–5. Defendant Gregoire further argues that the litigation privilege bars Plaintiff's claims and that

Plaintiff failed to state a claim as to all other counts. *Id.* at 7–11. Finally, Defendant Gregoire requests attorneys' fees and costs under 42 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority. *Id.* at 12.

Fourth, the Dealership Defendants and Defendant Ivers filed a Reply. ECF No. [41]. The Dealership Defendants and Defendant Ivers argue that the *Rooker-Feldman* doctrine bars Plaintiff's claims because adjudication of Plaintiff's federal claims would nullify the state order compelling arbitration. *Id.* at 5. As to Plaintiff's § 1985 claim, the Dealership Defendants and Defendant Ivers argue that discrimination based upon criminal history is not actionable under the statute. *Id.* Moreover, the Dealership Defendants and Defendant Ivers reiterate that the litigation privilege attaches to any acts within the course of judicial proceedings. *Id.* at 6. The Dealership Defendants and Defendant Ivers argue that even if the privilege did not apply, Plaintiff's §§ 1983 and 1985 claims cannot survive because they were not state actors acting under the color of state law. *Id.* The Dealership Defendants and Defendant Ivers also restate that the Amended Complaint is an improper shotgun pleading. *Id.* at 7.

Finally, the Department of State filed a Reply. ECF No. [44]. The Department of State first argues that Plaintiff has not provided any support for the claims that it stands in the shoes of the Unknown Agents until they are identified. *Id.* at 2. Thus, the Department of State contends that because sovereign immunity is not contingent, the claims against it must be dismissed. *Id.* Moreover, the Department of State argues that Plaintiff has failed to provide any detail as to the agents allegedly responsible for tracking Plaintiff or for committing him to a hospital in Guatemala. *Id.* at 2–3. In addition, the Department of State argues that Plaintiff has failed to state a claim regarding the alleged tracking because Plaintiff has failed to include any supporting facts. *Id.* at 5–6. The Department of State further states that any allegations regarding actions that

occurred in Guatemala arose in a different context and are not actionable under *Bivens*.  *Id.* at 4–5.  Finally, the Department of State argues that any attempt to engage in discovery is premature because Plaintiff has not stated a plausible claim for relief.  *Id.* at 6–7.

### III.   PLAINTIFF'S MOTION TO DISQUALIFY

In conjunction with his Omnibus Response to the Motions to Dismiss, Plaintiff filed a Motion to Disqualify Under the Advocate-Witness Rule (the "Motion to Disqualify").  ECF No. [31] at 36.  Plaintiff argues that Defendants Ivers and Russo are "necessary witnesses, who must provide testimony of material importance in this case."  *Id.*  Thus, Plaintiff submits that, pursuant to Rule 3.7(a) of the American Bar Association, Defendants Ivers and Russo cannot avoid being called as witnesses in this case by appearing as counsel.  *Id.* at 36–37.  In addition, Plaintiff states that that Defendant Ivers and Russo's communications in relation to the state proceeding are not privileged because they were in furtherance of an agreement to "sell out" Plaintiff and commit fraud on the court.  *Id.* at 37.

In response, Defendant Russo argues that the rules of the American Bar Association and the Rules Regulating the Florida Bar do not preclude him from self-representation in this action. ECF No. [34] at 3.  Specifically, Defendant Russo states that although the rules may dissuade an attorney from undertaking representation where he may be called as a witness, they do not "disallow a person who is an attorney from self-representation."  *Id.*  In addition, the Dealership Defendants and Defendant Ivers argue that the Motion to Disqualify should be denied because Plaintiff does not cite any case law in support of his contention.  ECF No. [41] at 3.  Specifically, they argue that Defendant Ivers was not involved in the motor vehicle transaction that forms the basis of Plaintiff's claims.  *Id.*

Plaintiff filed a Reply in support of his Motion to Disqualify.  ECF No. [43].  Plaintiff reaffirms that Defendants Russo and Ivers are material witnesses who must be disqualified because the subject of this suit is their extrajudicial agreement to deprive Plaintiff of his federal rights through the state proceeding.  *Id.* at 3.  Plaintiff submits that Defendants Russo and Ivers are necessary witnesses who cannot be permitted to appear as counsel in this action.  *Id.*

## IV.    SUMMARY OF RECOMMENDATIONS

The undersigned **RECOMMENDS** that the Amended Complaint be dismissed in its entirety as follows:

The Court **RECOMMENDS** that **Count I** for legal malpractice against Defendant Russo be **DISMISSED WITH PREJUDICE** because Plaintiff has failed to state a claim.  Plaintiff has already amended his Complaint once and no further amendments could establish that Defendant Russo neglected any reasonable duty.

The Court **RECOMMENDS** that **Count II** for deprivation of rights under 42 U.S.C. § 1983 against all Defendants be **DISMISSED WITH PREJUDICE** for the following reasons.  As to Judge Ruiz and the Department of State, they are entitled to immunity from Plaintiff's Section 1983 claim, and as such, the Court does not have jurisdiction over them.  As to the Agent Defendants, the Amended Complaint has failed to sufficiently describe them for Section 1983 purposes and no further amendment should be permitted because Plaintiff cannot plead a sufficient factual basis to show that a tracking device was placed on his vehicle or that federal agents committed him to a hospital in Guatemala.  As to Defendant Russo, Defendant Gregoire, Defendant Ivers, and the Dealership Defendants, the Court finds that Plaintiff has failed to state a claim under Section 1983 because they are private parties who cannot be sued under Section 1983, and further amendment would not cure this fatal defect.

The Court **RECOMMENDS** that **Count III** for conspiracy to interfere with civil rights under 42 U.S.C. § 1985 against all Defendants also be **DISMISSED WITH PREJUDICE** for the following reasons.  As to Judge Ruiz and the Department of State, the Court finds that they are entitled to immunity from Plaintiff's Section 1985 claim, and as such, the Court does not have jurisdiction over them.  As to the Agent Defendants, the Amended Complaint has not only failed to sufficiently describe them for Section 1985 purposes, additional amendments should not be permitted because Plaintiff cannot plead a sufficient factual basis to show that a tracking device was placed on his vehicle or that federal agents committed him to a hospital in Guatemala.  As to Defendant Russo, Defendant Gregoire, Defendant Ivers, and the Dealership Defendants, Plaintiff has failed to state a claim under Section 1985, and additional amendments should not be permitted because the sole basis of the alleged conspiracy is what the Parties stated on the record during the state court hearing.  As set forth herein, the Court finds that the representations made during the state court proceeding cannot form the basis of a Section 1985 claim.

The Court **RECOMMMENDS** that **Count IV,** the *Bivens* count against the Department of State and the Agent Defendants, be **DISMISSED WITH PREJUDICE**.  As to the Department of State, it is entitled to sovereign immunity, and as such, the Court does not have jurisdiction over it.  As to the Agent Defendants, the Court finds that the Amended Complaint has failed to sufficiently describe them, and Plaintiff cannot plead a sufficient factual basis to show that a tracking device was placed on his vehicle or that agents committed him to a hospital in Guatemala.

The Court **RECOMMMENDS** that **Count V** under the Alien Tort Statute against all Defendants should be **DISMISSED WITH PREJUDICE** for the following reasons.  As to Judge Ruiz and the Department of State, they are immune from claims under the Alien Tort Statute, and as such, the Court does not have jurisdiction over them.  As to the Agent Defendants, the Court

finds that the Amended Complaint has failed to sufficiently describe them, and Plaintiff cannot demonstrate that the Agents committed any torts in violation of international law, that they conspired to track Plaintiff from the United States to Mexico, or that they had him committed to a hospital in Guatemala.  As to Defendant Russo, Defendant Gregoire, Defendant Ivers, and the Dealership Defendants, the Court finds that Plaintiff has failed to state a claim under the Alien Tort Statute and that additional amendments should not be permitted because Plaintiff has already amended the Complaint and no additional amendment could establish that the remaining Defendants violated established international law.

The Court **RECOMMMENDS** that **Count VI** for fraud on the Court against Judge Ruiz, Defendant Russo, Defendant Gregoire, Defendant Ivers, and the Dealership Defendants be **DISMISSED WITH PREJUDICE**.  As to Judge Ruiz, she is immune from suit, and the Court does not have jurisdiction over her.  As to Defendants Russo, Gregoire, and Ivers, the Court finds that they are entitled to the litigation privilege and no claim based on their conduct in the state proceeding can be pled.  To the extent Plaintiff seeks money damages, the Court finds that Plaintiff has failed to state a claim and any additional amendments would be futile because Plaintiff cannot establish fraud on the state court solely based upon the hearing on the motion to compel arbitration.  Moreover, to the extent Plaintiff seeks review and rejection of the state court order compelling arbitration, the Court finds that **Count VI** is barred by the *Rooker-Feldman* doctrine.

In addition, because the undersigned **RECOMMMENDS** that the Amended Complaint be dismissed in its entirety, it is also **RECOMMENDED** that Plaintiff's Motion to Disqualify be denied.  Furthermore, the undersigned **RECOMMMENDS**, for the reasons noted below, that Defendants Ivers and Gregoire's request for attorneys' fees and costs be **DENIED**.

## V.      ANALYSIS

When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). A court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, a court need not accept a plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when the plaintiff states enough facts for the court to draw a "reasonable inference" that the defendant is liable for the alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.*

### A.  All Claims Against Judge Ruiz Should Be Dismissed With Prejudice.

The Amended Complaint asserts the following claims against Judge Ruiz: one count for deprivation of rights under § 1983 (Count II), one count for conspiracy to interfere with civil rights under § 1985 (Count III), one count under the Alien Tort Statute (Count V), and one count for fraud on the court (Count VI). *See* ECF No. [5]. Judge Ruiz seeks dismissal of all claims asserted against her based on (1) Eleventh Amendment immunity, (2) judicial immunity, and (3) qualified immunity. *See* ECF No. [11] at 2–5. As explained below, because Judge Ruiz is immune from suit, it is **RECOMMENDED** that all claims against her be **DISMISSED WITH PREJUDICE**.

### 1. Eleventh Amendment Immunity Bars Plaintiff's Claims.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Thus, unless a state consents to being sued, a state waives immunity, or Congress abrogates immunity, states and arms of the state are immune from state and federal claims "brought in federal courts by [their] own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Walker v. Jefferson County Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014) ("[Eleventh Amendment] immunity from suit is available only to states and arms of the states.") (quotation omitted). The Eleventh Circuit has determined that Florida circuit court judges "are arms of the state for Eleventh Amendment purposes." *Badillo v. Thorpe*, 158 Fed. Appx. 208, 213 (11th Cir. 2005); *Point Conversions, LLC v. Lopane*, No. 20-CV-61549, 2021 WL 328533, at *9 (S.D. Fla. Jan. 8, 2021), *report and recommendation adopted*, 2021 WL 327536 (S.D. Fla. Feb. 1, 2021) ("[A] Florida Circuit Court judge [is] an arm of the state for purposes of Eleventh Amendment sovereign immunity.").

Here, all the claims against Judge Ruiz stem from her rulings as the judge in Plaintiff's state court case. The State of Florida has not consented or waived, and Congress has not abrogated Eleventh Amendment immunity as to any of the claims against Judge Ruiz. *See Driessen v. Univ. of Mia. Sch. of Law Children & Youth Law Clinic*, 835 Fed. Appx. 489, 492 (11th Cir. 2020) ("Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and the State of Florida has not waived sovereign immunity or consented to suit with respect to such actions."); *Henry v. Fla. Bar*, 701 Fed. Appx. 878, 881 (11th Cir. 2017) ("Eleventh Amendment immunity bars [plaintiff]'s claims against the [defendant] under 42 U.S.C. §§ 1981, 1983, and 1985 because

neither Congress nor the state of Florida have abrogated Eleventh Amendment immunity under those claims."). Because Plaintiff impermissibly premises his claims on his dissatisfaction with her rulings, the counts against Judge Ruiz are not proper and should be dismissed with prejudice.

### 2. Plaintiff's Claims Are Also Barred By Judicial Immunity.

The Amended Complaint states that Judge Ruiz is sued "in her capacity as a Judge." ECF No. [5] at 1. The Amended Complaint then states that Judge Ruiz "denied a legally sufficient [recusal] motion and proceeded without jurisdiction to mistreat a Complaint pleading a criminal accord to violate a civil right as arbitrable." *Id.* at 1–2 (quotations and emphasis omitted). The Amended Complaint further states that Judge Ruiz "lost her immunity upon taking a partisan role during the hearing held on the motion to compel arbitration." *Id.* at 2. Moreover, in his Omnibus Response, Plaintiff reasserts that he is suing Judge Ruiz in her individual capacity because she abused the power of her office. ECF No. [31] at 32.

Judges are absolutely immune from damages for their conduct in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1235, 1239 (11th Cir. 2000) (quoting *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978)). "A judge acts in clear absence of all jurisdiction only if [she] lacked subject-matter jurisdiction." *McCullough v. Finley*, 907 F.3d 1324, 1332 (11th Cir. 2018). Absolute judicial immunity "applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239; *McCullough*, 907 F.3d at 1331 ("A judge enjoys absolute immunity for judicial acts regardless of whether he made a mistake, acted maliciously, or exceeded his authority . . . And the tragic consequences that result from a judge's acts do not warrant denying him absolute immunity from suit.") (quotations and citations omitted).

The Eleventh Circuit has established that the determination of whether a judge acted in her official capacity turns on whether: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Caldwell v. Downs*, 789 Fed. Appx. 183, 186 (11th Cir. 2019), (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005)), *cert. denied*, 140 S. Ct. 2524 (2020). Plaintiff's argument that Judge Ruiz "lost her immunity" is entirely unpersuasive. In denying the motion to disqualify and in compelling arbitration, Judge Ruiz was merely performing her function as a state circuit court judge, a decision that was later affirmed on appeal. *See Moskovits v. L. P. Evans Motors WPB, Inc.*, 303 So. 3d 543 (Fla. 3d DCA 2020). Plaintiff has not identified any action by Judge Ruiz that was performed outside of her ordinary judicial functions. Instead, Plaintiff questions Judge Ruiz's motivations in reaching her legal conclusions. *See* ECF No. [5] at 2 (alleging that Judge Ruiz acted with "willful blindness"). However, "[a] judge's motivation is irrelevant to determining whether [her] act was judicial." *McCullough*, 907 F.3d at 1331. As such, because there is no indication that Judge Ruiz acted without jurisdiction, Plaintiff's claims for money damages are barred by absolute judicial immunity.

### 3. Judge Ruiz Is Also Entitled To Qualified Immunity.

Qualified immunity "shields government officials performing discretionary acts 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*" Merricks v. Adkisson*, 785 F.3d 553, 558 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, government officials are not held personally liable for objectively reasonable actions taken within their official capacity. *Id.* This objective standard is governed by "clearly established law." *Id.*

(quoting *Harlow*, 457 U.S. at 818).   Discretionary acts within the scope of authority are those actions "undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [her] authority." *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1356 (S.D. Fla. 2008) (first alteration supplied) (quoting *Collier v. Dickinson,* 477 F.3d 1306, 1308 n.1 (11th Cir. 2007), *aff'd*, 327 Fed. Appx. 870 (11th Cir. 2009).   Courts are tasked with determining whether the allegations establish a violation of a clearly established Constitutional right.   *Id.*

In this case, even if Eleventh Amendment and absolute judicial immunity did not apply, Judge Ruiz would nonetheless be entitled to qualified immunity.   The allegations that give rise to Plaintiff's claims all occurred while Judge Ruiz was performing her official duties as a judge. Indeed, her decisions to deny a recusal motion and to compel arbitration in Plaintiff's state case were objectively reasonable adjudications that were upheld on appeal.   Accordingly, Judge Ruiz is also entitled to qualified immunity on Plaintiff's claims for monetary damages.

### B. Plaintiff's Claims Against The Department Of State Are Barred By The Doctrine Of Sovereign Immunity.

The Amended Complaint asserts one count for deprivation of rights under § 1983 (Count II), one count for conspiracy to interfere with civil rights under § 1985 (Count III), one *Bivens* claim (Count IV), and one claim under the Alien Tort Statute (Count V) against the Department of State.   *See* ECF No. [5].   The Department of State argues that it is entitled to sovereign immunity as to all four counts.   ECF No. [39] at 2–3.   In its Response to the Department of State's Motion to Dismiss, Plaintiff concedes that the Department is entitled to sovereign immunity, but requests that the claims against it not be dismissed until the Department produces sufficient discovery to permit Plaintiff to identify the Agent Defendants.   ECF No. [42] at 3–7.   Thus, Plaintiff argues that until the Agent Defendants are identified, the Department of State stands in the shoes of the unknown agents.   *Id.* at 4.   Plaintiff filed an affidavit in support of its Response in Opposition and

attached three subpoenas to the affidavit, which seek information regarding the identities of the Agent Defendants.  ECF No. [42] at 20–34.

The Department of State is entitled to sovereign immunity as to all the claims asserted against it.  *See Pereira v. USCIS Dist. Dir. Se. Region*, No. 20-13298, 2021 WL 3360964, at *2 (11th Cir. Aug. 3, 2021) (noting that *Bivens* claims cannot be asserted against federal agencies) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 483–86 (1994)); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) ("It is well established in this circuit that the United States has not waived its immunity to suit under the provisions of the civil rights statutes."); *Rosner v. United States*, 231 F. Supp. 2d 1202, 1210 (S.D. Fla. 2002) (noting that the Alien Tort Statute "is a jurisdictional statute only and does not itself waive sovereign immunity").  "Sovereign immunity is jurisdictional in nature."  *Meyer*, 510 U.S. at 475.  Because the Department of State is entitled to sovereign immunity, this Court is divested of jurisdiction over it.  Moreover, Plaintiff's request that the Court allow the Department to "stand in the shoes" of unknown agents has no basis in the law and no precedent or legal authority for such exists.  Therefore, that request must be denied.   Accordingly, it is hereby **RECOMMENDED** that Counts II, III, IV, and V be **DISMISSED WITH PREJUDICE** as to the Department of State.

### C. The Amended Complaint Fails To State A Claim Against The Agent Defendants.

Plaintiff alleges that on December 26, 2016, he sent an e-mail to a former federal prosecutor with the National Security Section, the FBI, and the IRS, questioning the prosecutor's involvement with a health care company and the chief clerk of the Third District Court of Appeal.  ECF No. [5] at 4.  The Amended Complaint further states that the former "prosecutor's wife has a past history of training Guatemalan officials and has deep ties with defendant [the Department of State]."  *Id.*  Plaintiff alleges that the former prosecutor then used his national security network to "mobilize"

the Agent Defendants "who conducted an identical car switch and unwarranted GPS tracker installation with the cooperation" of the Dealership Defendants and subsequently involuntarily committed him to a hospital in Guatemala. *Id.*

In its Motion to Dismiss, the Department of State argues that the claims against the Agent Defendants should be dismissed because the Amended Complaint lacks any specificity as to the identity of the agents, and as such, fail as a matter of law. ECF No. [39].

In his Response, Plaintiff concedes that he does not know the identity of the Agent Defendants. ECF No. [42] at 3–4. However, Plaintiff states that the Department of State will produce, through discovery, information that will enable the identification of the Agents. *Id.* at 4. Plaintiff submits that, in the interim, the Department of State must stand in the shoes of the Agent. *Id.* Along with his Response, Plaintiff submitted an affidavit in an attempt to provide greater detail as to the identity of the Agents. *Id.* at 9. Therein, Plaintiff states that: (1) he "reasonably infers" that a GPS tracker was installed by the Agent Defendants; (2) a "ZBV backscatter X-ray van . . . was dispatched to a deserted parking lot in Victoria, Texas on 'MLK Day,' where only [his] vehicle was parked"; (3) when he arrived at the United States Embassy in Guatemala, he spoke with a United States Marine; (4) at the Embassy in Guatemala, he recounted the attempted carjacking to an FBI agent; (5) when he went to the Embassy a second time, he spoke with "female staff working at the American Citizen Services section and then to Mr. Cano, who identified himself as a Consul"; (6) the female officer and Mr. Cano withheld his American passport; and (7) Mr. Cano involuntarily committed Plaintiff to a hospital in Guatemala. *Id.* at 9–14. In addition, Plaintiff attached three subpoenas directed to the Department of State, the FBI, and the IRS. *Id.* at 19–34. All three subpoenas request "documents reflecting [Plaintiff's] commitment." *See id.*

In its Reply, the Department of State argues that the Court should not consider the affidavit attached to Plaintiff's Response because Plaintiff cannot be permitted to amend his Complaint by attaching documents in response to a motion to dismiss.  ECF No. [44] at 2.  The Department of State argues that even considering the affidavit, Plaintiff has not provided any detail as to the identities of the Agents whom he claims installed a tracking device in his vehicle, who unlawfully scanned his vehicle in a Texas parking lot, or that any of those agents were employed by the Department of State.  *Id.* at 3.  In addition, the Department of State argues that any of the alleged unlawful acts that occurred in Guatemala carry foreign policy consequences that should not be adjudicated by the Court.  *Id.* at 5.  Finally, the Department of State argues that Plaintiff has failed to state a claim because his conclusory allegations that a tracking device was placed in his vehicle and that his vehicle was scanned in Texas are not plausible on their face.  *Id.*

As previously set forth, the Department of State is entitled to sovereign immunity against Plaintiff's claims, and as such, the Court does not have jurisdiction over it.  Plaintiff is incorrect that the Department of State stands in the shoes of the Agent Defendants until they are sufficiently identified.  Thus, the issue before the Court is whether Plaintiff has sufficiently described the Agent Defendants who allegedly switched Plaintiff's vehicle in Miami, scanned his vehicle in Texas, and involuntarily committed him to a hospital in Guatemala.

"As a general matter, fictitious-party pleading is not permitted in federal court."  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).  A fictitious party can be named a defendant only "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'"  *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).  In *Richardson*, the district court dismissed a *pro se* prisoner's § 1983 claim against three unknown guards at the correctional facility where he was held.  *Id.*  On appeal, the Eleventh Circuit affirmed

the dismissal because "the complaint was insufficient to identify the defendant among the many guards employed at [the correctional institute]." *Id.* In contrast, in *Dean*, the Eleventh Circuit concluded that the district court erred in dismissing a fictitious party, finding that the description provided in the complaint was sufficient. 951 F.2d at 1215. Specifically, the Court noted that by naming the "Chief Deputy of the Jefferson County Jail," the complaint described with sufficient specificity the identity of the defendant, particularly where it was clear that the identity of the chief deputy would be revealed through discovery. *Id.* at 1215–16.

First, as to the Agent Defendants who allegedly switched Plaintiff's vehicle in Miami and then scanned his vehicle in Texas, the Court finds that Plaintiff has not provided a sufficient description of the identity of the Agents. The Amended Complaint merely states that a former federal prosecutor "mobilized" federal agents to conduct a car switch, install a tracking device in his vehicle, and then scan the vehicle while it was parked in Texas. *See* ECF No. [5] at 19–20. Unlike *Dean*, the Amended Complaint does not provide ***any*** information that would enable the Court or the Parties to identify ***any*** particular agent within ***any*** particular federal agency. And, even considering the improperly filed affidavit, Plaintiff only adds that he reasonably infers that a tracking device was installed in his vehicle and that the scan of his vehicle took place in a parking lot in Victoria, Texas on MLK Day. *See Jallali v. Nova Se. Univ., Inc.*, 486 Fed. Appx. 765, 767 (11th Cir. 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss."). Because Plaintiff's bare bone allegations do not provide any information as to the identity of the Miami and Texas Agents, the Amended Complaint constitutes an improper fictitious-party pleading.

Even assuming that the Amended Complaint did sufficiently identify the Miami and Texas Agents, the allegations are still implausible and the claims are nonetheless subject to dismissal.

The Amended Complaint asserts four claims against the Agent Defendants: a Section 1983 claim (Count II), a Section 1985 claim (Count III), a *Bivens* claim (Count IV), and a claim under the Alien Tort Statute (Count V).  *See* ECF No. [5].  In support of these claims, Plaintiff merely states that the Agent Defendants violated his Constitutional rights by switching his vehicle in Miami, installing a tracker in his vehicle to enable them to track him from Miami to Texas, and then scanning his vehicle in Texas.  *See id.*  Plaintiff does not provide any facts in support of these allegations beyond these rank accusations.  Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  Plaintiff's conclusory allegations against the Miami and Texas Agent Defendants do not permit the Court to draw any reasonable inference that any person is liable for the misconduct alleged because the Amended Complaint merely posits that unlawful conduct *could* have occurred, without more.  *See Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1262–63 (11th Cir. 2004) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citation omitted).  Because Plaintiff has failed to sufficiently describe the Miami and Texas Agent Defendants and because the allegations against them are implausible on their face even after amendment and the submission of an affidavit, the Court **RECOMMENDS** that the claims as to these Agents be **DISMISSED WITH PREJUDICE**.

Moreover, as to the Agent Defendants who allegedly committed Plaintiff to a hospital in Guatemala, the Court also finds that the Amended Complaint fails to provide sufficient specificity as to the identity of the Agents.  The Amended Complaint merely states that unknown agents at the United States Embassy in Guatemala seized Plaintiff's American passport and involuntarily committed him to a hospital in Guatemala.  *See* ECF No. [5] at 20–21.  Again, Plaintiff does not

provide any information that would enable the Court or the Parties to identify any particular agent within any particular federal agency. The affidavit submitted along with Plaintiff's response to the Department of State's Motion to Dismiss adds that he met a United States Marine and an FBI agent the first time he visited the Embassy. ECF No. [42] at 12. Plaintiff then adds that a female staff member with the American Citizen Services confiscated his passport and that a man known as Mr. Cano committed him to a hospital. *Id.* at 13. Even if the Court were to consider the additional details improperly submitted by Plaintiff via the affidavit, Plaintiff has not provided sufficient details as to the identity of the United States Marine, the FBI agent, or the female staff member with the American Citizen Services that would enable the Court or the Parties to ascertain the identity of any agent within those respective agencies.

In addition, even assuming that the Guatemalan Agents and Mr. Cano had been properly identified, the Amended Complaint is still subject to dismissal. First, as previously set forth, the Amended Complaint does not provide any facts in support of Plaintiff's conclusory allegations. However, even taking Plaintiff's allegations that his passport was confiscated and that he was involuntarily committed to a hospital as true, the Complaint should still be dismissed because the alleged acts all occurred in Guatemala. Thus, Plaintiff's claims under Section 1983, Section 1985, the Alien Tort Statute, and *Bivens* fail because Plaintiff cannot seek damages against a United States official for alleged injuries that occurred abroad. *See Hernandez v. Mesa*, 140 S.Ct. 735, 747–50 ("To avoid upsetting the delicate web of international relations, we typically presume that even congressionally crafted causes of action do not apply outside our borders."). In sum, because Plaintiff has failed to sufficiently describe the Agent Defendants, has not stated a plausible claim for relief, and has not demonstrated that he could acquire any more supporting information, it is

hereby **RECOMMENDED** that all claims against the Agent Defendants (Counts II, III, IV, and V) be **DISMISSED WITH PREJUDICE**.

### D.   Plaintiff Has Failed To State A Claim For Legal Malpractice (Count I).

In support of the claim for legal malpractice against Defendant Russo, the Amended Complaint alleges that: (1) Plaintiff hired Defendant Russo "to set a hearing and oppose the motion to compel arbitration"; (2) that Defendant Russo acted negligently in representing Plaintiff by "failing to object to flagrant discrimination" against Plaintiff; (3) that but for Defendant Russo's "gross negligence in failing to cite binding caselaw," Plaintiff would have prevailed on the motion to compel arbitration; and (4) that "Plaintiff is entitled to recover damages for injury to his property" given the deprivation of his rights.  ECF No. [5] at 14–16.

Legal malpractice is a state law claim.  *See Kinsey v. King*, 257 Fed. Appx. 136, 139 (11th Cir. 2007).  In order to state a claim for legal malpractice under Florida law, a plaintiff must show: "(1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss . . . ."  *R.S.B. Ventures, Inc. v. Berlowitz*, 211 So. 3d 259, 263 (Fla. 4th DCA 2017) (citing *Kates v. Robinson*, 786 So.2d 61, 64 (Fla. 4th DCA 2001)).

The undersigned finds that Plaintiff has failed to state a claim for legal malpractice.  A review of the hearing transcript reveals that the following exchange took place:

> THE COURT: Didn't he have a criminal case, your client?
> MR. IVERS: (Nodding yes).
> MR. RUSSO: I don't know. He put something in his pleadings about
> THE COURT: So he has an open criminal case where he is charged with Is it grand theft auto?
> MR. RUSSO: No. No, he is not
> MR. IVERS: I am not sure.
> THE COURT: Does it have anything to do with this case?
> MR. IVERS: I am not sure what the criminal cases involves.

MR. RUSSO: Your Honor, he has an old, old criminal matter, that --

THE COURT: That is opened.

MR. RUSSO: No. He served his time and everything.

THE COURT: Oh, I thought it was – I am sorry.

MR. IVERS: No, I don' t think there is anything open. The open thing has to do with in his pleadings he was mentioning something about reports that he made to the FBI and some task force

THE COURT: Okay.

MR. IVERS: the federal tasks force, because of his beliefs of what occurred. Some task force that has to do with when the government improperly intrudes in your rights. So I think he filed that because apparently he thinks those third parties are that --

THE COURT: So it is a criminal matter that he alleges against someone else, that your client alleges against someone else?

MR. RUSSO: Well, the government

THE COURT: Where your client is the victim?

MR. RUSSO: Right. But prospectively also the dealership, right.

THE COURT: Got it.

MR. RUSSO: And the government, correct, least that is my understanding. I don't want to put words in his mouth. I didn't come here to argue that, but you asked me that so --

THE COURT: Sure. No. Because I remember something

MR. RUSSO: Yes, yes.

THE COURT: -- similar and maybe I am confusing it with another case.

ECF No. [5-1] at 50–52.  It appears that Plaintiff takes issue with Judge Ruiz's question as to whether a criminal case was pending against Plaintiff.  In doing so, Judge Ruiz asked about Plaintiff's allegation in his state complaint that the alleged car switch placed him at risk of being charged with auto theft.  *See id.* at 5 (stating that the car switch exposed Plaintiff to a false arrest for auto theft).  In response to Judge Ruiz's question, Defendant Russo clarified that although Plaintiff had been criminally convicted in the past, there was no pending criminal case against him.  The allegations in the Amended Complaint do not show, even when taken in the light most favorable to the Plaintiff, how Defendant Russo neglected a reasonable duty in answering Judge Ruiz's question and clarifying that there was no pending criminal case against Plaintiff.  *See*

*Resolution Tr. Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1530 (S.D. Fla. 1993) ("An attorney's reasonable duties include the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case."). Thus, the Amended Complaint fails to sufficiently state what reasonable duty Defendant Russo breached.

Moreover, the Amended Complaint's allegation that Defendant Russo failed to argue binding case law also fails. Specifically, the Amended Complaint states that Plaintiff would have prevailed on the motion to compel arbitration if Defendant Russo had cited *Sabates v. Int'l Med. Ctrs., Inc.*, 450 So. 2d 514 (Fla. 3d DCA 1984). In *Sebates*, Florida's Third District Court of Appeal merely concluded that antitrust claims are not subject to arbitration. *Id.* at 517. To be sure, Plaintiff's state complaint did not assert any antitrust claims. As such, the failure to argue the case cannot constitute neglect of a reasonable duty. Thus, it is hereby **RECOMMENDED** that Count I be **DISMISSED WITH PREJUDICE** because Plaintiff has already amended his pleadings once and no further amendment could establish that Defendant Russo neglected any reasonable duty.

### E.  Plaintiff Has Not Sufficiently Stated A § 1983 Claim (Count II).

The Amended Complaint alleges that all Defendants:

[A]ided and abetted each other in depriving plaintive of his Fourth Amendment right through unwarranted invasion of privacy from Miami, Florida to Guatemala City and his commitment into a notoriously dangerous hospital, and of his rights pursuant to the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution as each of the Defendants has acted with invidious discriminatory due to Plaintiff's status as a felon and thereby injured his person, property, and his rights with impunity.

ECF No. [5] at 16.

In order to state a § 1983 claim, a plaintiff must show: "(1) a deprivation of a federal right and (2) that the deprivation was committed under the color of state law." *Stevens v. Plumbers & Pipefitters Local 219*, 812 Fed. Appx. 815, 819 (11th Cir. 2020) (citing *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 49–50 (1999)).  The defendants, however, must be state actors.  *Id.* (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)); *Perdomo v. OSAH*, 805 Fed. Appx. 1012, 1014 (11th Cir. 2020) (concluding that dismissal of a § 1983 claim did not constitute reversible error because Constitutional claims cannot be asserted against "strictly private persons").  To establish that a private individual is a state actor for § 1983 purposes, Plaintiff must show that:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Id.* (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)).

As to Defendant Gregoire, Defendant Russo, the Dealership Defendants, and Defendant Ivers, the Court finds that dismissal is appropriate because these individuals and entities cannot be plausibly characterized as state actors.  The Amended Complaint does not allege that Defendant Gregoire, Defendant Russo, the Dealership Defendants, and Defendant Ivers are state actors under any of foregoing conditions beyond stating that they agreed to deprive Plaintiff of his Constitutional rights at the state court hearing on the motion to compel arbitration.  With respect to the state compulsion test and the joint action test, the Amended Complaint does not allege that the State significantly encouraged Defendants' alleged constitutional violations or that it had symbiotic relationship with Defendants, rather it generally states that all Defendants aided and abetted to deprive Plaintiff of his Constitutional rights without providing any supporting facts.  As to the public function test, there is no allegation that any of the Defendants performed any public function.  Accordingly, the Court concludes that Plaintiff has failed to state a § 1983 claim as to Defendant Gregoire, Defendant Russo, the Dealership Defendants, and Defendant Ivers.  As such,

it is **RECOMMENDED** that Count II be **DISMISSED WITH PREJUDICE** because the remaining Defendants are private parties against whom a Section 1983 claim cannot be sustained.

### F.   Plaintiff Has Failed To State A § 1985(3) Claim (Count III).

The Amended Complaint alleges that all Defendants "conspired to deprive the Plaintiff of equal protection of the laws, or equal privileges under the laws, implicating the Fourteenth Amendment of the U.S. Constitution as each of the defendants acted with invidious discriminatory intent due to Plaintiff's status as a felon, and thereby injured his person, property, and rights." ECF No. [5] at 18.  In addition, the Amended Complaint alleges that Defendant Russo acted in furtherance of the conspiracy "[b]y failing to object to discrimination, omitting binding caselaw to prevail, and making an erroneous admission used by his adversary."  *Id.*

In order to state a claim under § 1985(3), the plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward County, Fla.*, 516 F. Supp. 2d 1305, 1315 (S.D. Fla. 2007) (citing *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 793–94 (11th Cir. 1992), *abrogated on other grounds by Chua v. Ekonomou*, 1 F.4th 948, 956 (11th Cir. 2021)).  The second element presents a stringent requirement, namely "that that the conspiracy be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Id.* (quoting *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997)); *Chen ex rel. V.D. v. Lester*, 364 Fed. Appx. 531, 536 (11th Cir. 2010) (stating that a § 1985 complaint must allege that the plaintiffs are "members of a protected class or that the defendants were motivated by racial or class-based invidiously discriminatory

animus") (quotations omitted).  In order to sufficiently assert conspiracy for the purposes of §

1985(3), the complaint "must plead with enough specificity to inform the defendant of the nature

of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a

conspiracy existed." *Stephenson v. Ellis*, No. 3:11CV418/MCR/CJK, 2013 WL 1197723, at *5

(N.D. Fla. Jan. 25, 2013), *report and recommendation adopted*, 2013 WL 1197762 (N.D. Fla. Mar.

25, 2013) (internal citation omitted).

Here, the Amended Complaint makes the vague and conclusory allegation that Defendants

conspired to deprive Plaintiff of his equal protection and due process rights based on a

discriminatory animus towards felons.  *See* ECF No. [5] at 18.  Specifically, the Amended

Complaint is replete with vague and conclusory allegations that a conspiracy existed to conduct a

car switch, install a tracking device in Plaintiff's vehicle, commit Plaintiff to a hospital in

Guatemala, and then compel arbitration in the state proceeding.  The Amended Complaint does

not provide any support for the contention that Defendants knowingly agreed to deprive Plaintiff

of his Constitutional rights.  Instead, the Amended Complaint is replete with vague and conclusory

allegations that a conspiracy existed to conduct a car switch, install a tracking device, commit

Plaintiff to a hospital, and then compel arbitration in the state proceeding.  Moreover, additional

amendments should not be permitted because Plaintiff cannot establish a conspiracy based solely

upon the statements made during the state court hearing.  As such, because Plaintiff has failed to

allege a minimum of factual support for the existence of a conspiracy, it is **RECOMMENDED**

that Count III be **DISMISSED WITH PREJUDICE**.

### G.  Plaintiff Has Failed To State An Alien's Action For Tort (Count V).

In support of the Alien Action for Tort, the Amended Complaint states that: (1) Plaintiff is

a Brazilian national; (2) "Plaintiff was denied a fair hearing by an impartial judge, and he has been

deprived of his car"; (3) Defendants exhibited discriminatory animus against Plaintiff due to his status as a felon; (4) Plaintiff's civil rights were violated because a GPS tracker was installed in his vehicle, an x-ray van was used to screen his vehicle, his passport was seized, and he was involuntarily committed to a hospital; and (5) fraud was committed on the court. ECF No. [5] at 21–23. The Amended Complaint states that the foregoing constitutes a violation of the Universal Declaration of Human Rights, which provides for the right to trial, right to property, right to the protection of laws, right to be free from arbitrary detentions, and right to seek remedy from competent tribunals. *See id.*

In order to state a claim under the Alien Tort Statute, the plaintiff must be: "(1) an alien, (2) suing for a tort, which was (3) committed in violation of international law." *ldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005) (citing *Abebe–Jira v. Negewo*, 72 F.3d 844, 848 (11th Cir.1996)). The Eleventh Circuit Court of Appeals cautions "that the federal courts must act as vigilant doorkeepers and exercise great caution when deciding either to recognize new causes of action under the ATS or to broaden existing causes of action." *Mamani v. Berzain*, 654 F.3d 1148, 1152 (11th Cir. 2011) ("For a violation of international law to be actionable under the ATS, the offense must be based on present day, very widely accepted interpretations of international law: the specific things the defendant is alleged to have done must violate what the law already clearly is. High levels of generality will not do."). Thus, although detailed factual allegations are generally unnecessary, the complaint must plead as "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1153 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, courts must assess whether the complaint sufficiently pleads that a tort occurred. *Id.* at 1154.

The Court finds that the Amended Complaint fails to state a claim under the Alien Tort Statute. The Amended Complaint alleges that Plaintiff was improperly tracked, that he was deprived of the right to an impartial judge and hearing, and that he was deprived of the right to a trial. *See* ECF No. [5]. The allegations in the Amended Complaint are bare speculations without any factual basis to link any of the Defendants to the alleged wrongdoing. Plaintiff has not alleged any facts in support of the conclusion that Defendants did anything that violated established international law and thereby gives rise to jurisdiction under the Alien Tort Statute. As such, it is hereby **RECOMMENDED** that Count V be **DISMISSED WITH PREJUDICE** because Plaintiff cannot establish that any of the remaining Defendants violated any principles of international law.

### H.  Plaintiff Failed To State A Claim For Fraud On The Court (Count VI).

The Amended Complaint states that Defendants committed fraud on the court because: (1) Defendant Ivers ignored Plaintiff's request for a special set hearing on the motion to compel arbitration, thereby "keeping Plaintiff away from [state court] for over twenty (20) months"; (2) Defendant Ivers lied at the hearing on the motion to compel arbitration when he represented that he had spoken to Plaintiff many times prior to the hearing; (3) Defendant Russo failed to cite binding caselaw in opposition to the motion to compel arbitration; (4) Defendant Russo failed to object to discriminatory statements made against Plaintiff during the court hearing on the motion to compel arbitration; (5) a "rational inference" can be drawn that Defendants Russo and Ivers conspired to "sell out" Plaintiff at the hearing on the motion to compel arbitration; (6) Judge Ruiz denied a legally sufficient recusal motion; (7) Judge Ruiz made discriminatory statements against Plaintiff during the hearing on the motion to compel arbitration; (8) Judge Ruiz took a partisan role during the hearing on the motion to compel arbitration when she stated that the vehicle purchase agreement did not permit travel to Mexico; (9) Judge Ruiz ignored the invasion on

Plaintiff's privacy rights given the car switch and installation of a tracking device; and (10) Defendant Gregoire made misrepresentations in the state appellate briefings when she represented the Dealership Defendants.  ECF No. [5] at 23–27.  The Amended Complaint states that, based upon Defendant's fraud on the court, Plaintiff has suffered "severe emotional distress."  *Id.* at 28.  As such, Plaintiff requests $100,000 in damages, the entry of a judgment vacating the state court order compelling arbitration, an order re-opening the state case, and a hearing in "federal courts" as to the four causes of action stated in the state court complaint.  *Id.* at 30.

### 1. The Litigation Privilege Bars Count VI As To Defendants Russo, Gregoire, and Ivers.

Actions that have "some relation" to a judicial proceeding are absolutely immune from suit, which includes tortious behavior such as defamation.  *Sexton v. Carnival Corp.*, 504 F. Supp. 3d 1359, 1364 (S.D. Fla. 2020) (quoting *El Hassan v. Liberty Home Equity Sols., Inc.*, 2018 WL 3134418, *2 (S.D. Fla. June 26, 2018)); *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1110–11 (M.D. Fla. 2019) ("Florida's litigation privilege provides absolute immunity to statements or acts: (1) made or committed in judicial or quasi-judicial proceedings; and (2) 'connected with, or relevant or material to, the cause in hand or subject of inquiry.'") (quoting *DelMonico v. Traynor*, 116 So.3d 1205, 1212 (Fla. 2013)).  In Florida, the privilege applies to "any tort or statutory cause of action based on false statements or other wrongful conduct."  *AGM Inv'rs, LLC v. Bus. Law Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017) (citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 380–81 (Fla. 2007)); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004) ("Where . . . the conduct in question is inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit."); *Wendel v. Int'l Real Estate.*

*News, LLC*, No. 19-21658-CIV, 2019 WL 6218660, at *3 (S.D. Fla. Nov. 4, 2019), *report and recommendation adopted sub nom. Wendel v. Int'l Real Estate News, LLC*, 2019 WL 6218646 (S.D. Fla. Nov. 21, 2019) ("The party who claims abuse of process may still proceed on his/her suit as long as it is based on an action that is taken *outside* of the judicial proceeding or it is an action that is not related to the judicial proceeding.") (emphasis supplied).  However, an absolute privilege under state law "cannot defeat a federal cause of action."  *Suchite v. Kleppin*, 819 F. Supp. 2d 1284, 1292 (S.D. Fla. 2011) (declining to apply Florida's litigation privilege to an FLSA retaliation claim) (quoting *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998)); *Huls v. Llabona*, 437 Fed. Appx. 830, 832 (11th Cir. 2011) (concluding that Florida's litigation privilege did not bar a § 1983 claim); *Phillips v. Mitchell's Lawn Maint. Corp.*, No. 13-20854-CIV, 2015 WL 12533113, at *3–5 (S.D. Fla. Nov. 17, 2015) (collecting cases).

Here, the Amended Complaint asserts four causes of action against Defendants Russo, Gregoire, and Ivers.  *See* ECF No. [5].[2]  The Florida litigation privilege does not apply to Count II for deprivation of rights under § 1983, Count III for conspiracy to interfere with civil rights under § 1985, and Count V under the Alien Tort Statute because they are federal claims that are not subject to the state privilege.  However, Count VI for fraud on the court is a tort claim governed by Florida law.  *See generally Luigino's Intern., Inc. v. Miller*, 311 Fed. Appx. 289, 293 (11th Cir. 2009) (noting that fraud claims are governed by state law).  In support of this claim, the Amended Complaint alleges that: (1) Defendant Ivers failed to specially set the motion to compel arbitration for hearing; (2) Defendant Ivers erroneously stated at the motion to compel arbitration hearing that he had spoken to Plaintiff many times; (3) Defendant Russo failed to argue binding case law in

---

[2] The Amended Complaint also asserts one count for legal malpractice against Defendant Russo, ECF No. [5] at 14, but Defendant Russo did not assert the litigation privilege as to this count.

opposition to the motion to compel arbitration; (4) Defendant Russo failed to object to the discriminatory statements made during the state hearing; (5) Defendant Ivers conspired with Defendant Russo to "sell out" Plainitff at the motion to compel arbitration; (6) all lawyers conspired to deprive Plainitff on his Constitutional rights at the hearing on the motion to compel arbitration; (7) Defendant Gregoire misrepresented Plaintiff's position in her response brief to the Third District Court of Appeal; and (8) Defendant Gregoire "improperly influence[d]" the Third District Court of Appeal to award attorneys' fees and costs.  ECF No. [5] at 23–28.  Indeed, all of the alleged wrongdoings occurred during the course of the state trial and appellate proceedings and directly related to those proceedings.  Therefore, because Florida's litigation privilege protects Defendants Gregoire, Ivers, and Russo as to Count VI, it is **RECOMMENDED** that Count VI be **DISMISSED WITH PREJUDICE** as to these three Defendants.

### 2.   To The Extent Plaintiff Seeks Money Damages, The Amended Complaint Fails To State A Claim For Fraud On The Court.

In order to state a claim for fraud on the court, Plaintiff must show: "(1) conduct of an officer of the court; (2) that is directed to the judicial machinery itself; (3) that is intentionally false, willfully blind to the truth, or in reckless disregard of the truth; (4) that is a positive averment or concealment when one is under a duty to disclose; and (5) that deceives the court."  *In re Brannan*, 485 B.R. 443, 453 (Bankr. S.D. Ala. 2013) (citing *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009)); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("A fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system . . . .").  An action for fraud on the court is limited to fraud that "does or attempts to, defile the court itself, or as a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication . . . ."

*Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).  The Federal Rules of Civil

Procedure impose a heightened pleading standard for fraud.  *See* Fed. R. Civ. P. 9(b).

To the extent Plainitff seeks monetary damages, the Court finds that Plaintiff has failed to

state a claim.  Plaintiff's claim for fraud on the state court is premised on a belief that the lawyers

and the judge conspired to compel arbitration.  However, Plaintiff has not provided any facts to

show that any fraud occurred.  Instead, the transcript of the state hearing and the filings on appeal

demonstrate that the lawyers presented their respective arguments and Judge Ruiz ultimately

concluded that Plaintiff's claim was subject to arbitration.  Because the Amended Complaint is

devoid of any facts to show the specific contents of the alleged fraud and Plaintiff could not

establish fraud through any additional amendments as to these state court proceedings, it is

**RECOMMENDED** that Count VI be **DISMISSED WITH PREJUDICE**.

### 3.   The *Rooker-Feldman* Doctrine Bars Plaintiff's Demand That The State Court Order Be Vacated.

The *Rooker-Feldman* doctrine "is a narrow jurisdictional doctrine.  It simply establishes

that a party who loses a case in state court cannot appeal that loss in a federal district court."  *Behr*

*v. Campbell*, 8 F.4th 1206, 1208 (11th Cir. 2021).  Specifically, "federal district courts cannot

review or reject state court judgments rendered before the district court litigation began."  *Id.* at

1212; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (concluding that

the *Rooker-Feldman* doctrine only applies to "cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments").

Here, as to Count VI for fraud on the court, Plaintiff first requests the entry of a judgment

vacating the state court order compelling arbitration, re-opening the state case, and setting a

hearing in this Court on the causes of action asserted in the state complaint.  *See* ECF No. [5] at

30.  To afford Plaintiff the declaratory relief sought, this Court would have to review and overturn the state court's order compelling arbitration.  Because a district court's review of a state court order is prohibited by the *Rooker-Feldman* doctrine, Count VI should be **DISMISSED WITH PREJUDICE** to the extent it seeks a declaratory order rejecting the state court's order.[3]

## I.  Attorneys' Fees And Costs Should Not Be Assessed Against Plaintiff.

Defendants Ivers and Gregoire request attorneys' fees and costs under 42 U.S.C. § 1988(b), 28 U.S.C. § 1927, and the Court's inherent authority for Plaintiff's "vexatious and meritless litigation."  ECF Nos. [26] at 13, [40] at 12.  As an initial matter, Section 1927 only applies to an attorney's litigation conduct.  *Oquendo-Rosado v. Foods of S. Florida, Inc.*, No. 15-21797-CIV, 2019 WL 2254950, at *4 (S.D. Fla. May 8, 2019) (noting that Section 1927 only applies to attorneys).  Because Plaintiff is not an attorney but is instead proceeding *pro se*, Section 1927 does not apply his conduct in this litigation.

Moreover, Section 1988(b) is a fee-shifting statute, which provides that the Court within its discretion may award the prevailing party in a civil rights action its reasonable attorneys' fees and costs.  42 U.S.C. § 1988(b).  However, a defendant may only recover attorneys' fees and costs under Section 1988 if it demonstrates "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Beach Blitz Co. v. City of Mia. Beach, Fla.*, 13 F.4th 1289, 1297 (11th Cir. 2021) (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).  In addition, the Court may assess attorneys' fees and costs as a sanction pursuant to its

---

[3] Defendants Russo, Gregoire, Ivers, and the Dealership Defendants also argue that Count I for legal malpractice, Count II under Section 1983, Count III under Section 1985, and Count V under the Alien Tort Statute are barred by the *Rooker-Feldman* doctrine.  The Court rejects this contention because to the extent Plaintiff seeks money damages, the *Rooker-Feldman* doctrine does not bar Counts I, II, III, V.  *See Behr*, 8 F.4th at 1213 (noting that the *Rooker-Feldman* doctrine does not bar claims to recover money damages for Constitutional violations).  These Counts, as noted above, are rejected on other grounds.

inherent authority. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007) (noting that the court's inherent authority to impose sanctions includes the "striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorneys' fees and costs, and outright dismissal of a lawsuit") (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005)).  However, to do so, the Court must make a finding of bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 n.4 (11th Cir. 2017) (noting that "[t]he key to unlocking a court's inherent power is a finding of bad faith").  Bad faith can be found in three instances: (1) when fraud has been committed on the court, *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)); (2) when a party "delays or disrupts the litigation, or hampers the enforcement of a court order," *id.* (citing *Chambers*, 501 U.S. at 46); or (3) when "an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent," *id.* (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

In this case, although the Amended Complaint is frivolous, unreasonable and without foundation, the Court **RECOMMENDS** that attorneys' fees and costs should not be assessed against Plaintiff at this time given that Plaintiff is proceeding *pro se*.  Indeed, Plaintiff may not understand federal jurisdiction, immunity law, and civil rights law as would be expected of attorneys.  In addition, there is no evidence of bad faith, at this juncture, to merit an award against Plaintiff.  Therefore, it is hereby **RECOMMENDED** that Defendants Ivers and Gregoire's request for attorneys' fees and costs be **DENIED**.

## VI.    CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that the Amended Complaint, ECF No. [5], be **DISMISSED WITH PREJUDICE**.  In addition, Defendants Gregoire and Ivers'

request for attorneys' fees and costs should be **DENIED**.  *See* ECF Nos. [26], [40].  Because dismissal of the Amended Complaint is recommended, Plaintiff's Motion to Disqualify Defendants Russo and Ivers, ECF No. [31], should be **DENIED AS MOOT**.  Finally, Plaintiff's Motion to Supplement his Omnibus Response, ECF No. [45], should be **DENIED AS MOOT**.

## VII.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on January 10, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE